## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 14-CIV-62262-Bloom/Valle

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, and
COEX COFFEE INTERNATIONAL,

      Plaintiffs,

v.

ALL AMERICAN FREIGHT, INC.,
HARTLEY FREIGHT LINES, LLC, and
HARTLEY TRANSPORTATION, LLC,

      Defendants.

_____/

### OMNIBUS ORDER

      This cause is before the Court upon Defendant Hartley Transportation, LLC's Motion for Summary Judgment, ECF No. [55], and Motion to Strike Declaration and Evidence Submitted in Opposition to Motion for Summary Judgment, ECF No. [67], as well as Defendant Hartley Freight Lines, LLC's Motion for Summary Judgment, ECF No. [57], and Motion to Strike Declaration and Evidence Submitted in Opposition to Motion for Summary Judgment, ECF No. [69] (hereinafter, the "Motions for Summary Judgment" and "Motions to Strike," respectively, and the "Motions," collectively).  The Court has reviewed the Motions for Summary Judgment, the Motions to Strike, all responses and replies thereto, the record in this case, and is otherwise fully advised in the premises.  For the reasons that follow, the Motions to Strike and Defendant Hartley Transportation, LLC's Motion for Summary Judgment are denied; however, Defendant Hartley Freight Lines, LLC's Motion for Summary Judgment is granted.

1

# I. FACTS AND BACKGROUND

At all times pertinent to this action, Defendant Hartley Transportation, LLC (hereinafter, "Hartley Transport") was a licensed cargo broker with motor carrier number MC-289335.  *See* Amended Complaint ("Amend. Compl."), ECF No. [34] at ¶ 11; Hartley Transport's Rule 56.1 Statement of Undisputed Facts ("Hartley Transport SOF"), ECF No. [56] at ¶ 10.  In October 2011, Plaintiff Coex Coffee International ("Coex") hired Hartley Transport to transport 320 bags of green coffee (the "Cargo") from Colmar Storage Warehouses ("Colmar") in Miami, Florida, to Coex's client in Houston, Texas.  *See* Declaration of Ana Garcia ("Garcia Decl."), ECF No. [55-2] at ¶¶ 5-7.  On October 4, Coex issued Delivery Order # 76226, which provided that the shipper was "TO TAKE [the Cargo] DIRECTLY TO [] WAREHOUSE IN HOUSTON BY HARTLEY FOR THE ACCT OF COEX."  *Id.* at ¶ 7; Coex Delivery Order ("Delivery Order"), ECF No. [55-2] at 4.  Coex's instructions as to the carrier were nonspecific, simply requesting that the bill of lading be "signed by the trucker."  *See* Exhibit 1 to Affidavit of Thomas Hartley ("Hartley Aff."), Email dated September 21, 2011, ECF No. [55-9] at 7.  Coex did, however, request that "the Hartley team . . . [p]roceed in *coordinating* the delivery to [the recipient]."  *Id.* (emphasis added).  Thereafter, Hartley subcontracted the shipment of the Cargo to All American Freight ("AAF").  Garcia Decl. at ¶ 8.  According to Coex, Hartley Transport did not notify it of the subcontracting.  *Id.* at ¶ 9.  The shipping receipt, nevertheless, lists "Hartley Transportation" as the carrier on the shipment.  *See* Shipping Receipt for Shipping Order # 11200 ("Shipping Receipt"), ECF No. [55-2] at 5.

After the delivery was placed and AAF was hired, AAF's employee, Luis Alberto ("Alberto"), picked up the Cargo from Colmar and signed the Shipping Receipt.  *See* Chartis Report of Investigation ("Investigation Report"), ECF No. [60-13] at 3-4; Amend. Compl. at ¶

32.  Alberto then left the trailer unattended for several hours.[1]  *See* Investigation Report at 3-4; Amend. Compl. at ¶ 32.  When Alberto returned, the trailer containing the Cargo was gone.  Investigation Report at 4.  Unfortunately, Colmar's cameras were not operating at the time of the theft and the trailer was never recovered.  *See id.*  At the time of the theft, Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") insured Coex's goods against transit-related loss and damage.  Amend. Compl. at ¶ 5.  Pursuant to the terms of this insurance policy, National Union paid Coex the value of the loss, $100,423.76, less Coex's deductible.  *Id.* at ¶ 35.

Based on the theft, National Union, as Coex's subrogee, commenced this action asserting three counts for breach of carriage contract under the Carmack Amendment against AAF, Hartley Transport, and Defendant Hartley Freight Lines, LLC ("Hartley Freight"), a related entity which National Union and Coex (collectively, "Plaintiffs") contend is the same entity as Hartley Transport.  *See id.* at ¶¶ 15-16, 27.  Because the Carmack Amendment governs carriers, not brokers, both Hartley Transport and Hartley Freight (collectively, "Defendants") assert that they are not subject to liability as neither entity operated as the carrier in the transaction at issue.  *See* Motions for Summary Judgment; *see also Hewlett-Packard Co. v. Brother's Trucking Enterprises, Inc.*, 373 F. Supp. 2d 1349, 1351 (S.D. Fla. 2005) (citing 49 U.S.C. § 14706(a)) ("The Carmack Amendment governs carriers, not brokers.").  While Hartley Freight is a designated transportation carrier seemingly subject to the Carmack Amendment, its involvement in the shipment of the Cargo, as alleged by Plaintiffs, is predicated upon the belief that "[a]lthough Hartley Freight and Hartley Transport are distinct legal entities and Hartley

---

[1] It is unclear as to whether Alberto had left the trailer inside the Colmar lot.  *See* Investigation Report at 4 (indicating that the trailer was parked "outside of the [Colmar] lot").

Transport is a licensed freight broker, Hartley Freight and Hartley Transport acted in concert and in a singularly capacity with respect to carriage of goods detailed herein, namely as an interstate motor carrier of goods for hire subject to the Carmack Amendment."  Amend. Compl. at ¶ 16. Although Plaintiffs contend that Hartley Freight and Hartley Transport were one and the same, Coex's employee, Ms. Garcia was entirely unfamiliar with Hartley Freight Lines.  *See* Garcia Depo. at 22:19-21, 81:19-82:2.[2]

In the event Hartley Transport is not subject to the Carmack Amendment, Plaintiffs bring an alternative claim for negligence.  *See* Amend. Compl. at ¶¶ 58-72.  According to Plaintiffs, Hartley Transport negligently selected AAF with respect to the carriage of the Cargo by failing to investigate AAF and, more specifically, failing to select a carrier that would ensure Coex would be "properly compensated in the event of the loss or damage to the Cargo."  *See id.*

The parties hotly dispute Hartley Transport's role in the relationship and the transaction. According to Thomas Hartley ("Mr. Hartley"), the president of Hartley Transport, Hartley Transport operates exclusively to as a transportation broker, which has neither owned physical trucks nor employed truck drivers.  *See* Hartley Aff. at ¶¶ 8-10.  Mr. Hartley avers that Coex "understood that . . . Hartley Transport[] [] would [] select and retain the actual motor carrier or rail service provider to perform the pickup and transportation of the cargo."  *See id.* at ¶ 12, 14-15.  Further, Mr. Hartley asserts that "[a]t no time did [he], or anyone at Hartley Transport[], represent that Hartley Transport[] would provide the physical transportation of cargo, or assume

---

[2] Garcia's earlier-filed declaration appears to conflict with this fact.  Despite seemingly being Defendants' point of contact with Coex, Garcia states that Coex understood Defendants to be the same entity.  *See* Garcia Decl. at ¶ 4.

responsibility as carrier for the transport."[3]  *Id.* at ¶¶ 12-15.  As expected, Coex's perception of the relationship varies.

Odalys Ramos ("Ms. Ramos"), a former account manager for Coex and Hartley Transport's initial point of contact, consistently understood Hartley Transport "to be a transportation provider" and that Coex was hiring Hartley Transport "to physically move Coex's coffee."  *See* Declaration of Odalys Ramos ("Ramos Declaration"), ECF No. [59] at ¶ 10.  In line with Hartley Transport's handling of the transaction at issue, see Garcia Decl. at ¶ 9, Ms. Ramos states that, throughout her tenure as an account manager, neither Mr. Hartley nor Hartley Transport provided Coex with invoices from any third-party motor carriers or any other documentation indicating that an entity other than Hartley Transport was transporting Coex's product.  *See* Ramos Decl. at ¶ 16.  Similarly, Coex's claims administration supervisor, Ana Garcia ("Ms. Garcia"), operated under the belief that Hartley Transport was a trucking company based, not only on the name, but also, the fact that she never received invoices from third-party trucking entities regarding Coex's shipments.  *See* Garcia Depo. at 53:6-54:23.

Hartley Transport's state filings and marketing neither confirms nor refutes its status as either a broker or a carrier.  Hartley Transport's certificate of formation, filed with the State of New Hampshire on April 8, 1999, indicates that the entity's primary purpose is to "provide[] and/or arrange[] to provide its customers with a variety of air, sea and land freight transportation and delivery services . . . ."  *See* Certificate of Formation, Exhibit 1 to Coex's Response, ECF No. [60-1] at 2.  On its website, Hartley Transport holds itself as "a total transportation services provider," and includes several images of trucks bearing its insignia.  *See* Website Screenshot,

---

[3] Although Mr. Hartley contends that these facts were "reflected in numerous oral and written discussions between Hartley Transport[] and Coex," the record is devoid of such evidence, with the exception of the Hartley Affidavit itself.  *See* Hartley Aff. at ¶¶ 15, 17.

Exhibit 5 to Coex's Response, ECF No. [60-5] at 2; Website Screenshot, Exhibit 8 to Coex's Response, ECF No. [60-8] at 2.  Forms utilized by Hartley Transport in transacting business refer to the entity as a "carrier."  *See* Customer Payment Terms Agreement, Exhibit 10 to Coex's Response, ECF No. [60-10] at 2.

Through their respective Motions for Summary Judgment, Hartley Freight and Hartley Transport (collectively, "Defendants") now seek entry of judgment in their favor, asserting, primarily, that neither acted as carrier in the subject transaction and are, therefore, not subject to liability under the Carmack Amendment.

## II. LEGAL STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.* (quoting *Anderson*, 477 U.S. at 247-48).  The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  Further, the Court does not weigh conflicting evidence.  *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact.  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor.  *Shiver*, 549 F.3d at 1343.  Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate.  *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

In resolving issues presented under Fed. R. Civ. P. 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied."  *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993))).

# III. DISCUSSION[4]

Before addressing Defendants' respective summary judgment arguments, the Court must first resolve Defendants' Motions to Strike, filed contemporaneously with Defendants' replies, which seek to remove several critical documents from the record.

## A.    Defendants' Motions to Strike

The motions to strike seek to exclude various evidence that Coex has submitted in opposition to Defendants' Motions for Summary Judgment.  *See* Motions to Strike, ECF Nos. [67] and [69].  Specifically, Defendant Hartley Transport requests that the Court strike the Declaration of Odalys Ramos, ECF No. [59], on the basis that Coex failed to disclose her during discovery, and Coex's Exhibits 1 through 10, ECF Nos. [60-1] through [60-10] (the "Exhibits"), on grounds that the Exhibits are unauthenticated and, therefore, inadmissible. *See* Motion to Strike, ECF No. [67]. Defendant Hartley Freight agrees, seeking to strike essentially the same exhibits.  *See* Motion to Strike, ECF No. [69].

Federal Rule of Civil Procedure 37(c) provides that where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  "[W]hen a party fails to comply with Rule 26, the district court does not abuse its discretion by striking an affidavit submitted in opposition to summary judgment, pursuant to Rule 37(c)."  *Lawyer v. Hillcrest Hospice, Inc.*, 300 F. App'x 768, 770 (11th Cir. 2008) (citation omitted).   "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the non-disclosing party."  *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (citation omitted).  In making this

---

[4] Although National Union is the true party in interest, as subrogee, this discussion refers exclusively to Coex for the sake of simplicity.

determination, courts are to consider "the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008)); *Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005) ("In reviewing for abuse of discretion a court's exclusion of a non-disclosed witness, we consider (1) the importance of the testimony, (2) the reasons for the [party's] failure to disclose the witness earlier, and (3) the prejudice to the opposing party if the witness had been allowed to testify.") (internal quotation and citation omitted). "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (quoting *Berryman–Dages v. City of Gainesville Fla.*, No. 1:10cv177–MP–GRJ, 2012 WL 1130074, at *2 (N.D. Fla. Apr. 4, 2012)).

A straightforward reading of the Ramos Declaration reveals that the testimony provided therein is related to the business relationship that existed between Coex and Defendants. Notably, Ms. Ramos attests to facts concerning the beginning of the business relationship between Coex and Hartley Transport, as well as Coex's beliefs regarding Hartley Transport's role in the transportation services it purportedly provided: Ramos notes that she "always understood that Coex was hiring Mr. Hartley's company to physically move Coex's coffee." *See* Ramos Decl. at ¶¶ 7-16. Further, Ms. Ramos verifies that Coex was never provided "with invoices from any third-party motor carriers or any other information or documentation that indicated that some entity other than Mr. Hartley's was moving Coex's coffee." *Id.* at ¶ 16.

In assessing Defendants' objection, the Court utilizes the aforementioned considerations.

*See Lips*, 350 F. App'x at 340; *Cooley*, 138 F. App'x at 161.  Defendants assert that the Ramos Declaration should be stricken because Coex failed to identify Ms. Ramos during discovery.  In response, Coex argues that Ms. Ramos' identity fell outside the scope of the requested discovery.  Moreover, despite Defendants' knowledge of Ms. Ramos, Defendants declined to seek discovery as to her knowledge surrounding the circumstances of the exchange between the parties.  However, Coex's argument is a thinly veiled attempt to shift its discovery obligations onto Defendants.

As Coex notes, Defendants requested testimony and evidence regarding the parties' "course of dealings."  *See* Coex's Strike Response, ECF No. [74] at 7.  Clearly, the testimony elicited in the Ramos Declaration directly corresponds to any "course of dealing" between the parties.  The source utilized by Coex to support its contention that Ms. Ramo's testimony was outside the scope of the requested discovery confirms her utility in answering Defendants' questions.  Black's Law Dictionary defines "course of dealing" as "[a]n established pattern of conduct between parties in a series of transactions (e.g., multiple sales of goods over a period of years)."  Course of Dealing, Black's Law Dictionary (10th ed. 2014).[5]  Ms. Ramos' knowledge was clearly relevant to the parties' course of dealing.

To the extent the discovery sought concerned the parties' dealings as limited by the allegations set forth in the Amended Complaint, which was seemingly confined to the transaction at issue, it should have become apparent to Coex that the issues raised in this litigation extended beyond the individual transaction.  Hartley Transport has repeatedly attempted to dismiss the action based on the contention that Hartley Transport is not a carrier subject to the Carmack

---

[5] In defining this term, Coex employs an antiquated edition of Black's Law Dictionary.  *See* Coex's Strike Response, ECF No. [74] at 7. n.2.

Amendment, thereby revealing that the ultimate issue presented extended beyond the isolated transaction.   Accordingly, the Court finds Coex's excuse for the nondisclosure to be unconvincing.  Ms. Ramos was known to have information concerning the relationship between the parties and it was Coex's burden, not Defendants', to inform Defendants of her relevance when her knowledge fell within the ambit of Defendants' discovery requests.  At a minimum, Coex should have erred on the side of caution and disclosed Ms. Ramos as an individual with relevant knowledge.    *See Faulk v. Volunteers of Am.*, 444 F. App'x 316, 317 (11th Cir. 2011) ("Each party is required to disclose the names of individuals likely to have discoverable information that the party may use to support its claims or defenses." (citing Fed. R. Civ. P. 26(a)(1)(A)(i))).

Coex claims its nondisclosure is one of simple oversight.  In essence, Coex asserts that it was not aware of Ms. Ramos' relevance until the Defendants' corporate representative jogged its memory.  *See* Coex's Strike Response, ECF No. [74] at 9 ("[Coex's] institutional memory was only jogged after Defendants filed the Affidavit of Thomas Hartley, in which Mr. Hartley affirmed that Ms. Ramos participated in the original Coex-Hartley discussion.").  The Court finds this justification unpersuasive.  As noted above, Coex should have been aware that the parties' course of dealing extended beyond the individual transaction.  Ms. Ramos did not leave Coex's employ but, rather, simply changed departments in 2009, a mere two years prior to the incident which forms the basis for this action.  Pursuant to Rule 26, it was Coex's obligation to disclose individuals with relevant knowledge. *See* Fed. R. Civ. P. 26(a)(1)(A)(i).  Accordingly, Coex has failed to establish a valid reason for the nondisclosure.  *See, e.g., Faulk*, 444 F. App'x at 318 (no abuse of discretion where "[defendant] would not have known that [plaintiff] was relying upon information from" the individuals at issue); *Lawver*, 300 F. App'x at 770 (no abuse

11

of discretion where witness was not disclosed in either initial disclosures or in response to interrogatories).

Because Rule 37(c) operates in the disjunctive, the question then becomes one concerning whether the failure to disclose was harmless. *See* Fed. R. Civ. P. 37(c). For all intents and purposes, Defendants have been deprived of the opportunity to depose Ms. Ramos given her late disclosure. Perhaps an investigation into Ms. Ramos' knowledge would have yielded useful information. As a result, Defendants have been prejudiced.

Notwithstanding the foregoing, the Court must also consider the importance of Ms. Ramos' statement. *See Cooley*, 238 F. App'x at 161 (noting that courts consider, *inter alia*, "the importance of the testimony"); *see also Lips*, 350 F. App'x at 340 (same). The importance of the information Ms. Ramos seeks to provide weighs strongly in favor of its admittance. The preexisting business relationship between the parties bears strong relation to the alleged understanding that Hartley Transport, not a third-party, would be transporting Coex's products. This question has been placed at issue by virtue of Hartley Transport's defense that it is not an entity subject to the Carmack Amendment and, therefore, forms one of the most critical issues in this litigation. Additionally, Defendants cannot entirely disclaim knowledge of Ms. Ramos' involvement in the ongoing business relationship between the parties. Mr. Hartley acknowledges Ms. Ramos' involvement in the commencement of the relationship as early as January 2002. *See* Hartley Aff. at ¶ 12. Indeed, Hartley Transport references Ms. Ramos in its Statement of Facts. *See* Hartley Transport SOF at ¶ 17. Thus, while Coex is primarily at fault for Ms. Ramos' tardy appearance, Defendants were aware that, at a minimum, from 2002 to 2009, Ms. Ramos was Defendants' point of contact at Coex. *See* Hartley Aff. at ¶¶ 12, 16.

Upon consideration of the three factors elucidated in *Cooley*, the Court finds that Ms.

Ramos' testimony need not be stricken.  Although Coex fails to provide a robust excuse for its failure to disclose Ms. Ramos at an earlier stage and Defendants have incurred slight prejudice by their inability to conduct any discovery as to Ms. Ramos' knowledge, the testimony bears on a pivotal issue in this case and is, therefore, of considerable importance.  Considering its gravity and Defendants' awareness of Ms. Ramos prior to seeking the instant relief, the Court shall consider the Ramos Declaration in ruling on the Motions for Summary Judgment.

As to the purportedly unauthenticated Exhibits, the general rule is that inadmissible hearsay or inadmissible documents may not be considered on a motion for summary judgment. *See Snover v. City of Starke, Fla.*, 398 F.App'x 445, 449 (11th Cir. 2010) ("On motions for summary judgment, a court may consider only that evidence which can be reduced to an admissible form.") (internal quotations and citations omitted); *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment.").  While authentication is a prerequisite to admissibility, "[o]therwise admissible evidence can be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." *Bowe v. Pub. Storage*, No. 1:14-CV-21559-UU, 2015 WL 3440418, at *3 (S.D. Fla. May 19, 2015) (citing *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996)).  Thus, where the contested evidence may be reduced to an admissible form at trial, the Court may consider it.  There is no indication that the aforementioned Exhibits are incapable of authentication at trial.  Accordingly, the Court declines to strike them and will consider them for the purposes of summary judgment.[6]

---

[6] Defendants also contend that there is no evidence that Coex relied upon the representations made on the website.  Whether Coex's representative actually relied on the representations in the Exhibits is irrelevant as the determination of whether an entity is a broker or a carrier depends on

**B.**   **Genuine Issues of Fact Preclude a Determination that Hartley Transport Acted Exclusively as a "Broker" under the Carmack Amendment**

The Carmack Amendment ( the "Amendment") codifies a common law rule of strict liability on common carriers.  Enacted in 1906 as an amendment to the Interstate Commerce Act of 1887, the Amendment now forms part of the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 14706.  In general, the Carmack Amendment governs interstate cargo claims, controls and limits the liability of common carriers for in-transit cargo, and preempts common or state law remedies that increase a common carrier's liability beyond the actual loss or injury to the property.  *See, e.g., A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F.3d 997, 1003 (11th Cir. 2003) (citing 49 U.S.C. § 14706(a)(1)) ("The Carmack Amendment to the Interstate Commerce Act makes common carriers liable for actual loss of or damage to shipments in interstate commerce."); *Smith v. United Parcel Serv.*, 296 F.3d 1244, 1246 (11th Cir. 2002) ("The Carmack Amendment creates a uniform rule for carrier liability when goods are shipped in interstate commerce."); *see also Casamassa v. Walton P. Davis Co.*, No. 207CV-317-FTM-34DNF, 2008 WL 879412, at *3 (M.D. Fla. Mar. 28, 2008) ("The Carmack Amendment provides that a shipper may recover the 'actual loss or injury to the property' caused by a carrier." (quoting 49 U.S.C. § 14706(a)(1))).  The Amendment "provides the exclusive cause of action for interstate shipping contract claims."   *White v. Mayflower Transit, LLC*, 543 F.3d 581, 584 (9th Cir. 2008).   As a result, state law claims arising from failures in the transportation and delivery of goods are preempted.  *Smith*, 296 F.3d at 1246 (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913)); *see also Hansen v.*

how that entity holds itself out to the public, not one particular individual.  *Hewlett-Packard Co. v. Brother's Trucking Enterprises, Inc.*, 373 F. Supp. 2d 1349, 1351 (S.D. Fla. 2005) ("Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper.") (citation omitted).

*Wheaton Van Lines, Inc.*, 486 F. Supp. 2d 1339, 1343-44 (S.D. Fla. 2006) ("The law is well established that the remedies available under the Carmack Amendment preempt all state, common and statutory law regarding the liability of an interstate common carrier for claims arising out of shipments within the purview of said statute.").

It is axiomatic that "[t]he Carmack Amendment governs carriers, not brokers." *Hewlett-Packard Co. v. Brother's Trucking Enterprises, Inc.*, 373 F. Supp. 2d 1349, 1351 (S.D. Fla. 2005) (citing 49 U.S.C. § 14706(a)). The term "carrier" is defined by the Carmack Amendment as "a motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). The term "motor carrier," in turn, is defined as "a person providing motorvehicle transportation for compensation." *Id.* at § 13102(14). In contrast, a "broker" under the Amendment, " means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." *Id.* at § 13102(2). Hartley Transport contends that, at all times, it acted exclusively as a transportation broker.

"Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper." *Hewlett-Packard*, 373 F. Supp. 2d at 1351 (citation omitted); *see also Schramm v. Foster*, 341 F. Supp. 2d 536, 549 (D. Md. 2004) (noting that "[t]he focus of the court's inquiry must be on [defendant's] role in the specific transaction . . . and the nature of the relationship between [the parties]") (citation omitted). "Because the difference between a carrier and a broker is often blurry, the carrier/broker inquiry is inherently fact-intensive and not well-suited to summary judgment." *Gonzalez v. J.W. Cheatham LLC*, 125 So. 3d 942, 945 (Fla. 4th DCA 2013) (citing

*Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, Inc.*, No. 09 CIV. 2365 PGG, 2011 WL 671747 (S.D.N.Y. Feb. 18, 2011)).

Here, a genuine issue of material fact exists concerning whether Hartley Transport held itself out to the world and, more importantly, Coex, to be a carrier as the term is defined by the Carmack Amendment.  Essentially, the Court is presented with what can only be described as competing affidavits.  The testimony of Mr. Hartley unequivocally declares that neither Hartley Transport, nor any of its agents, have ever represented that Hartley Transport would be the actual carrier of the shipments, particularly the shipment at issue.  Coex's employees, on the other hand, perceived an entirely different relationship, one in which Hartley Transport was hired to physically transport Coex's product.  Evidence submitted concerning how Hartley Transport represented itself to the public appears to support Coex's perception, particularly when viewed in the light most favorable to Coex.  For example, Hartley Transportation's website indicates that it is "a total transportation services provider," and contains images of physical trucks bearing the Hartley Transportation name.  *See* Website Screenshot, Exhibit 5 to Coex's Response, ECF No. [60-5] at 2; Website Screenshot, Exhibit 8 to Coex's Response, ECF No. [60-8] at 2. Additionally, there is evidence that Hartley Transport referred to itself as a "carrier" in forms utilized to transact business.  *See* Customer Payment Terms Agreement, Exhibit 10 to Coex's Response, ECF No. [60-10] at 2.

The remaining evidence pointed to by Hartley Transport confirms that questions remain surrounding the nature of the parties' relationship.  For instance, with respect to the transaction at issue, Coex merely requested that the bill of lading be signed by "the trucker."  This ambiguity, however, does not unequivocally indicate that Coex intended for a different party to perform the services; rather, the lack of specificity creates a question of fact concerning Coex's

understanding of the agreement. Similarly, the Shipping Receipt issued for the Cargo indicates that Hartley Transport was the carrier, notwithstanding the fact that AAF's employee, Alberto, signed the receipt.  *See* Shipping Receipt.  In light of the conflicting evidence and Coex's denials, the evidence indicating that Coex was aware that Hartley Transport merely coordinated the shipment, does not absolve these issues of fact.[7]

Finally, the fact that Hartley Transport only maintains a freight brokerage license with the Federal Motor Carrier Safety Administration is not dispositive.  *See Hewlett-Packard*, 373 F. Supp. 2d at 1351 (noting the immateriality of how the company "labels itself").

In sum, genuine questions of fact concerning Hartley Transport's status under the Carmack Amendment persist.  *See Underwriters At Lloyds Subscribing to Cover Note MC-1151 v. Fedex Truckload Brokerage, Inc.*, No. 09-21892-CIV, 2010 WL 2681224, at *5 (S.D. Fla. July 7, 2010) (holding that material issues of fact as to whether defendant "*actually* acted as a carrier" precluded summary judgment).  In *Schramm v. Foster*, a case relied upon by Hartley Transport to support its argument herein, the District of Maryland granted summary judgment in favor of the defendant, finding that there was no evidence that defendant "conveyed to [the shipper] that it would be transporting the load itself or that it engaged in anything other than 'selling, providing, or arranging for, transportation by motor carrier for compensation.'"  341 F. Supp. 2d at 550 (quoting 49 U.S.C. § 13102(2)).  Contrastingly, here, there exists sufficient evidence to raise a fact question as to Hartley Transport's role, regardless of whether it actually handled the unrecovered Cargo.  In short, the Court is unable to ascertain the manner in which Hartley Transport represented itself to the world and the nature of the relationship between the parties

---

[7] To reiterate, Coex instructed "the Hartley team [to]. . . [p]roceed in *coordinating* the delivery to [the recipient]."  Exhibit 1 to Hartley Aff., ECF No. [55-9] at 7 (emphasis added).  Even this, taken in conjunction with the Investigation Report, which notes that AAF was to deliver the Cargo to Houston, do not indisputably confirm that Coex was aware of the subcontracting.

without stepping into the shoes of the factfinder.

## C.   Questions Exist Concerning Coex's Negligence Claim

Count IV is pled in the alternative, that is, should Hartley Transport be deemed a freight broker not subject to the Carmack Amendment, it nevertheless acted negligently by breaching its "duty to exercise reasonable care in selecting, approving, and hiring the inland carrier to carry the Cargo . . . ."  Amend. Comp. at ¶ 59.  More specifically, Coex's claim is predicated upon AAF's lack of insurance coverage for unattended vehicles.  *See id.* at ¶ 64.  Due to AAF's purportedly inadequate insurance coverage, Coex was exposed to risk in the form of insufficient compensation in the event of loss or damage to the Cargo, "a fact Hartley Transport knew or should have known by virtue of its obligation to investigate AAF's qualifications."  *Id.* at ¶ 65. Accordingly, "[b]y hiring AAF and not expressly instruct[ing] AAF not to leave its vehicle unattended, Hartley Transport breached its duties to properly and carefully select an inland carrier to carry the Cargo."  *Id.* at ¶ 69; *see also* Coex's Response, ECF No. [60] at 11 ("Hartley Transport should have either refused to hire AAF to carry the Cargo or should have instructed that the Cargo not be left unattended at any time.").

Hartley Transport contends that the specific duties Coex seeks to hold Hartley Transport accountable for are fabricated.   According to Hartley Transport, as a broker, it merely owed a duty to use reasonable care in the selection of the trucking company.   Under Florida law, negligence requires a showing that "the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages."  *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001).   "The determination as to whether there exists a duty of care in a negligence action is a question of law."  *Hewlett-Packard*, 373 F. Supp. 2d at 1352 (citing *McCain v. Fla. Power Corp.*, 593 So. 2d 500 (Fla.

1992)).  Duty "may arise from several sources: '(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments; (3) other judicial precedent; and (4) a duty arising from the general facts of the case.'"  *Id.* at 1352-53 (quoting *Clay Elec. Co-op., Inc., v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)).

Although the Eleventh Circuit has not spoken on the issue, other courts have confirmed Hartley Transport's apprehension of the relevant law: the duty of care applicable to a broker "is to exercise due care in selecting an appropriate carrier."  *Chubb Grp. of Ins. Companies v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064, 1071 (C.D. Cal. 2002) (citing *Professional Communications, Inc. v. Contract Freighters, Inc.*, 171 F. Supp. 2d 546, 552 (D. Md. 2001); and *Adelman v. Hub City Los Angeles Terminal, Inc.*, 856 F. Supp. 1544, 1548 (N.D. Ala. 1994)).  Stated differently, a broker's obligation to the shipper is "limited to arranging for transportation with a reputable carrier."  *KLS Air Express, Inc. v. Cheetah Transp. LLC*, No. CIV. S05-2593 FCDDAD, 2007 WL 2428294, at *5 (E.D. Cal. Aug. 23, 2007) (citing *Chubb Grp. of Ins. Companies v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064, 1071 (C.D. Cal. 2002)).

Coex points to no cases in support of the assertion that the aforementioned duty to select an appropriate and reputable carrier requires a broker to choose a carrier with unattended vehicle coverage.  *See* Coex's Response, ECF No. [60] at 10-11.  To the contrary, the one court addressing a negligence claim predicated upon an insurance deficit has held that there is no duty to hire a carrier with specific insurance.  *See Chubb*, 243 F. Supp. 2d at 1071-72 (noting, however, that this duty may arise from contractual obligations).  In *Chubb*, the plaintiff's negligence claim was grounded in the fact that defendant was negligent "in hiring a carrier that had inadequate insurance to cover the cargo loss."  *Id.*  Based largely on the fact that the shipper was fully insured for the loss suffered, the court granted summary judgment on the plaintiff's

negligence claim.  *Id.* at 1072.  Particularly, the court noted that "where the shipper . . . is fully insured for the loss or theft of its cargo, it would appear to be most dubious for the law to impose a duty on its broker to ensure that the carrier has insurance to cover the same loss."  *Id.* Similarly, here, Coex was completely insured for the loss suffered.  *See* Amend. Compl. at ¶ 35 ("Pursuant the terms of National Union's insurance policy with Coex, National Union paid Coex's $100,423.76 loss, less Coex's deductible . . . .").  Thus, Coex requests that this Court do precisely what the court in *Chubb* explicitly declined: impose a duty not couched in any case law and inconsistent with common sense.  *See Chubb*, 243 F. Supp. 2d at 1072 ("It seems unlikely that [the shipper] would have chosen to pay more for the shipment so that its insurance company would be compensated in the event of loss.").

By way of contrast, *Hewlett-Packard Co. v. Brother's Trucking Enterprises, Inc.*, 373 F. Supp. 2d 1349 (S.D. Fla. 2005), is instructive.  In *Hewlett-Packard*, the Court denied summary judgment finding that the defendant's failure to follow the shipper's specific instructions as to hiring certain drivers with specific security requirements "created a foreseeable zone of risk." *See* 373 F. Supp. 2d at 1352-53.  The defendant's misstep as to carrier selection, the Court reasoned, would permit a reasonable factfinder to conclude that defendant "failed to exercise due care in the hiring of [the carrier] and in executing [the shipper's] instructions."  *Id.*  In the instant matter, Coex did not explicitly instruct Hartley Transport to make certain that it, or any carrier it subcontracted, maintained unattended vehicle coverage.

Thus, the assertion that Hartley Transport breached its duty in selecting a reputable carrier is without merit.[8]  However, in line with *Hewlett-Packard*, there exists a question as to

---

[8] Hartley Transport's "Broker-Carrier" contracts require Hartley Transport's carriers to provide it "with cop[ie]s of any Insurance Policy Exclusions," and states that the carrier shall "assume[] all responsibility and liability for any cargo loss to include policy exclusions and to include

whether Hartley Transport complied with Coex's express instructions.  To recall, the delivery order issued on the Cargo provided the following instruction: that the shipper was "TO TAKE [the Cargo] DIRECTLY TO [] WAREHOUSE IN HOUSTON BY HARTLEY FOR THE ACCT OF COEX."  *See* Delivery Order at 4.  Hartley Transport opts not to address why this alleged failure does not create an issue of fact.  Nevertheless, the instruction to take the Cargo "directly" to Houston, Texas, and the subsequent failure to comply with this instruction, creates an issue as to whether Hartley Transport breached a duty it owed to Coex.  *See Hewlett-Packard*, 373 F. Supp. 2d at 1352-53 (denying summary judgment on negligence claim where potential carrier failed to comply with shipper's specific instructions).

### D.   Plaintiffs have failed to Validly Dispute Hartley Freight's Lack of Involvement in the Transaction and Shipment at Issue

Hartley Freight seeks judgment on the claim brought against it under the Carmack Amendment, asserting that it played no role in the shipment of the Cargo.  As has been noted previously in this litigation, Hartley Freight and Hartley Transport are distinct legal entities.  *See* Order Granting Motion to Dismiss, ECF No. [32] at 6 ("Although they share a root name, Hartley Transport and Hartley Freight remain distinct artificial entities.").  Nevertheless, Coex persists in its argument, once again attempting to impose some form of alter-ego liability on Hartley Freight by virtue of an apparent relationship between it and Hartley Transport.  Specifically, Coex points to the fact that Hartley Freight shares a physical address, website, telephone number, email address, and employees with Hartley Transport.  Unfortunately, Coex,

---

unattended vehicle, [or] theft . . . or other circumstance resulting in cargo loss while in care, custody and control of carrier . . . ."  *See* Broker/Carrier Transportation Agreement, ECF No. [34-4] at ¶ 10.  While this may serve as evidence that Hartley Transport disclaimed liability for such conduct in the event it subcontracts transportation of the particular goods, it is irrelevant to the negligence count.  As noted, there is no duty to select a carrier with particular insurance coverage, absent specific instruction.  *See Chubb*, 243 F. Supp. 2d at 1071-72.  Further, there is no evidence that this was the same agreement entered into between Hartley Transport and AAF.

once again, cites absolutely no law to support its request that the corporate forms of Hartley Freight  Hartley Transport should be disregarded and/or commingled.  "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.  [The Court] will not do his research for him."  *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (Posner, J.) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.  [The Court] will not do his research for him." (internal citations omitted)).  Absent precedent which would allow the Court to disregard the distinct corporate forms, the Court declines to do so.

The only other basis in the record which would perhaps allow for a conclusion that Hartley Freight was at all involved in this transaction concerns an assumed reference found in the Delivery Order for the subject shipment.  The Delivery Order indicates simply that "Hartley" was to transport the Cargo, stating that the Cargo was to be taken "directly to Cadeco warehouse in Houston by Hartley for the acc[ount] of Coex."  Based on this lack of specificity, Coex contends it is unclear whether Hartley Transport or Hartley Freight was responsible for the shipment.  However, this ambiguity is resolved and refuted by the record, particularly, by Coex's designated corporate representative's complete and utter lack of knowledge concerning Hartley Freight.

Ms. Garcia's testimony clearly indicates that Coex believed it was dealing with Hartley Transport, not Hartley Freight.  At her deposition, Ms. Garcia, was questioned regarding Hartley Freight:

> Q.     Are you familiar looking at item 4 with a company called
> Hartley Freight, Hartley Freight Lines?

22

> A.  Hartley, I know them as Hartley Transportation Company.
> Q.  And who are they?
> A.  They are the appointed trucking company.  At the time of the event, we hired them to take from one warehouse to the facility of our customer.
> Q.  Okay. So that's item 5. You're familiar with that company, Hartley Transportation?
> A.  Yes.
> Q.  Okay.  You are not familiar with Hartley Freight?
> A.  No, sir.

*See* Garcia Depo. at 22:8-21.   Thus, when Ms. Garcia was asked whether she was familiar with Hartley Freight, she categorically responded, "No."  *Id.* at 22:19-21.  Later, counsel posed the following question: "You don't have any idea who Hartley Freight is?"  *Id.* at 81:19-25.  Ms. Garcia responded, "I don't know."  *Id.*  Again, Ms. Garcia confirmed that she only knew of Hartley Transportation:

> Q.  You only know Hartley Transportation?
> A.  Hartley Transportation.

*Id.* at 82:1-2.  Because Coex was not even aware of Hartley Freight's existence at the time of the transaction, it cannot now claim that, at the time the Delivery Order was executed, it thought it was dealing with Hartley Freight.  At every stage, Coex believed it was interacting with Hartley Transport, not Hartley Freight.  More importantly, there is absolutely no evidence that Hartley Freight was a party to the transaction resulting in the theft.  Ms. Garcia's earlier-filed[9] declaration does not create a genuine issue as to whether Hartley Freight was involved in the subject shipment.  Although Ms. Garcia claims that Coex was unaware of a distinction between Hartley Transport and Hartley Freight, see Garcia Decl. at ¶ 4, this allegation does not introduce evidence that Hartley Freight was involved in the transaction at issue, especially in light of the fact that Ms. Garcia is seemingly unaware of Hartley Freight's connection to Hartley Transport,

---

[9] Ms. Garcia's deposition was taken on November 20, 2015; her declaration was signed on February 23, 2015.  *Compare* Garcia Depo. *with* Garcia Decl.

let alone its existence in general.  *See* Garcia Depo. at 22:8-21, 81:19-82:2.

Further, despite having the opportunity to conduct discovery in this matter, Coex has failed to introduce evidence that Hartley Freight, not Hartley Transport, was ever utilized for any of Coex's prior shipments, despite the fact that Coex has engaged in business with Hartley Transport for a period spanning almost an entire decade.  *See* Hartley Aff. at ¶ 24.  Coex's simple reference to the Delivery Order is, however, insufficient to support the conclusion that Hartley Freight was responsible for the shipment at issue in light of the resounding evidence to the contrary.  In the same vein, Coex fails to counter Hartley Freight's contention that it leases a single vehicle and provides regional trucking services exclusively in the New England area, notwithstanding the fact that ample time for discovery has been permitted.  *See id.*

In short, there is a complete dearth of evidence that Hartley Freight, a distinct legal entity, participated in the transaction leading to the theft of the Cargo.  Coex fails to introduce any competent evidence creating an issue of fact as to whether Hartley Freight played a role in the shipment and otherwise fails to support its argument that the entities are one in the same with reference to applicable law.   Accordingly, Coex presents no cogent legal or factual reason as to why judgment should not be entered in favor of Hartley Freight.

### IV. CONCLUSION

While Coex's presentation of this case has been less than artful, and while the facts surrounding the transaction at issue lend themselves to the conclusion that Hartley Transport acted as a broker and not a carrier, such facts are not so clear cut as to warrant judgment being entered in Hartley Transport's favor.  On the other hand, Coex has failed to dispel the undisputed fact that Hartley Freight played no role in the transaction at issue.  As a result, and for the reasons stated herein, it is hereby **ORDERED AND ADJUDGED** as follows:

Case No. 14-CIV-62262-Bloom/Valle

1.  Defendant Hartley Transportation, LLC's Motion to Strike Declaration and Evidence Submitted in Opposition to Motion for Summary Judgment, **ECF No. [67]**, and Defendant Hartley Freight Lines, LLC's Motion to Strike Declaration and Evidence Submitted in Opposition to Motion for Summary Judgment, **ECF No. [69]**, are **DENIED**;

2.  Defendant Hartley Transportation, LLC's Motion for Summary Judgment, **ECF No. [55]**, is **DENIED**; and

3.  Defendant Hartley Freight Lines, LLC's Motion for Summary Judgment, **ECF No. [57]**, is **GRANTED**.

Pursuant to Rule 58(a) of the Federal Rules of Civil Procedure, final judgment will be entered in favor of Defendant Hartley Freight Lines, LLC by separate order.

**DONE AND ORDERED** in Miami, Florida, this 16th day of February, 2016.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record

25