UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 14-cv-62262-BLOOM/Valle

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, and
COEX COFFEE INTERNATIONAL,

    Plaintiffs,

v.

ALL AMERICAN FREIGHT, INC.,
HARTLEY FREIGHT LINES, LLC, and
HARTLEY TRANSPORTATION, LLC,

    Defendants.
_____/

### ORDER ON MOTION FOR JUDGMENT AS A MATTER OF LAW, RELIEF FROM JUDGMENT OR NEW TRIAL

**THIS CAUSE** is before the Court upon Defendant Hartley Transportation, LLC's ("Hartley") Renewed Motion for Judgment as a Matter of Law, Motion for Relief from Judgment, or alternatively Motion for a New Trial (the "Motion"). ECF No. [169]. The Court has reviewed the Motion, all supporting and opposing filings, the record in this case, and is otherwise fully advised on the premises. For the reasons that follow, the Motion is denied.

**I. BACKGROUND**

The Court assumes the parties' familiarity with the facts and procedural posture of this case, but will briefly set forth the relevant background. This action arises out of an agreement between Coex Coffee International ("Coex") and Hartley Transportation, LLC for the transportation of 320 bags of coffee valued at $100,423.76. *See* ECF No. [55-2] ¶ 5. The coffee was to be brought from Colmar Storage in Miami, Florida, to the Coex headquarters in Houston, Texas. *See id.* ¶ 7. Coex hired Hartley to handle this transportation, and Hartley subcontracted

the shipment to All American Freight, Inc. ("AAF"). *See id.* at ¶ 8. According to Coex, Hartley did not notify it of the decision to subcontract their transportation job. *See id.* ¶ 9.

At some point after leaving the Colmar facility, the driver of the AAF truck left the vehicle unattended. *See* ECF No. [60-13] at 4. The truck, along with its contents, was subsequently stolen and never recovered. *Id.* National Union Fire Insurance Company, as subrogee for Coex (collectively referred to as "Coex"), then brought this action against Hartley. The matter ultimately proceeded to trial where a jury determined that Hartley operated as a carrier in this transaction and was liable for damages for the loss of property under the Carmack Amendment ("Carmack"). *See* ECF No. [163]. Based on the jury's interrogatory verdict, the Court entered a final judgment in favor of Coex, ECF No. [167], and on May 13, 2016, Hartley filed the instant Motion. As the basis for the Motion, Hartley claims that Coex failed to prove (1) a *prima facia* case under Carmack, and (2) in any event, as a matter of law, Hartley acted as a broker and not a carrier in this transaction. Coex's Response and Hartley's Reply timely followed. *See* ECF Nos. [173], [176].

## II. LEGAL STANDARD

### a. Renewed Judgment as a Matter of Law under Rule 50(b)

Hartley first moves for a renewed motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure. To prevail, "the facts and inferences [of a case must] point so overwhelmingly in favor of the movant that reasonable people could not arrive at a contrary verdict." *Millette v. DEK Techs., Inc.*, 2011 WL 5331708, at *2 (S.D. Fla. Nov. 7, 2011). The Court must look to the clarity of the original trial record and ultimately consider "all evidence in the light most favorable to the plaintiff." *Id.*; *see Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001). The Court should not second guess or

"substitute its judgment for that of the jury." *Lipphardt*, 267 F.3d at 1186. To succeed, Hartley has the burden to prove that there is indeed only "one reasonable conclusion as to the verdict." *Id.*

### b.  Motion for New Trial under Rule 59

Alternatively, Hartley seeks a new trial under Rule 59. Importantly, because a "less stringent standard applies to a motion for a new trial than to a motion for a judgment as a matter of law," the failure to meet the Rule 59 standard is fatal to the Rule 50(b) standard. *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1320 n.3 (11th Cir. 1999) (citing *Holzapfel v. Town of Newburgh*, 950 F. Supp. 1267, 1272 (S.D.N.Y. 1997)); *see Williams v. Consol. City of Jacksonville*, 2006 WL 4794172, at *1 (M.D. Fla. Sept. 11, 2006) (quoting *Dudley* to hold that "because a less stringent standard applies to a new trial than a judgment as a matter of law," the "former is fatal to the latter"); *see also Weiss v. Ren Lab. of Fla.*, 1999 WL 976072, at *9 (S.D. Fla. Sept. 24, 1999); *Hudson v. Chertoff*, 473 F. Supp. 2d 1279, 1285 (S.D. Fla. 2007). Accordingly, the Court addresses these motions jointly in determining whether the respective standards are met. *See Dudley*, 166 F.3d at 1320 n.3. As with a Rule 50(b) motion, the Court must not simply substitute its judgment for that of the jury in deciding whether to grant a motion under Rule 59, but rather, may grant a new trial only if the verdict is "against the great—not merely the greater—weight of the evidence." *See id*. Hartley has the burden of proving that the jury's verdict is against the great weight of the evidence so as to constitute a "miscarriage of justice." *See id.*

### c. Motion for Relief from Judgment under Rule 60

Finally, Hartley seeks relief from a judgment under Rule 60. Hartley fails to cite the grounds on which it seeks relief under this rule. The Court, therefore, considers the motion

under the legal standard required of Rule 60(b)(6), allowing "relief from a final judgment, order, or proceeding" for "any other reason that justifies relief." Under this subcategory, the movant must show an "exceptional circumstance" that warrants relief. *See Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014).

### III. DISCUSSION

Title 49 U.S.C § 14706, the Carmack Amendment, protects shippers against the negligence of interstate carriers. *See Fine Foliage of Fla., Inc. v. Bowman Transp., Inc.*, 901 F.2d 1034, 1037 (11th Cir. 1990). Carmack provides that a common carrier is liable for the actual loss or injury to goods in interstate commerce that were otherwise given to that carrier in good condition. *Id.* To prevail, the shipper must prove by a preponderance of the evidence that (1) the goods were delivered to the carrier in good condition; (2) the goods never arrived at their destination, or arrived in a damaged condition; and (3) specified damages. *See Cont'l Grain Co. v. Frank Seitzinger Storage, Inc.*, 837 F.2d 836, 839 (8th Cir. 1988). If a Plaintiff establishes these factors, a carrier is only relieved from liability by an affirmative showing that the loss of the cargo was a result of some external force, not the carrier's own negligence. *See id.*

Hartley argues that the Court erred in finding that Carmack applies to this case because Hartley did not serve as a carrier, but rather as a broker, delegating the coffee transportation job to another carrier service. A motor carrier is defined as: "any person owning, controlling, operating, or managing any motor vehicle used to transport persons or property over any public highway." *Gonzalez v. J.W. Cheatham LLC.*, 125 So. 3d 942, 943 (Fla. 4th DCA 2013). Under Carmack, entities that are subject to carrier liability must have "held" themselves out to be carriers in the specific transaction at issue. *See Active Media Servs., Inc. v. CAC Am. Cargo Corp.*, 2012 WL 4462031, at *2 (S.D.N.Y. Sept. 26, 2012). By extension, the focus of the

"inquiry must be on the defendant's role in the specific transaction . . . and the nature of the relationship between the parties." *Schramm v. Foster*, 341 F. Supp. 536, 549 (D. Md. 2004).

The jury found Hartley liable as a carrier in the specific transaction at issue. *See* ECF No. [163]. Importantly, the distinction between broker and carrier does not turn on exactly *what* Hartley did, so much as *how* Hartley affirmatively represented itself to Coex. *See Gonzalez*, 125 So. 3d at 944. The jury considered testimony and other evidence including Hartley's website, featuring trucks bearing the Hartley logo and statements that Hartley is a "total transportation service provider." *See* ECF No. [60-8] at 2. Indeed, the jury was presented with evidence that Hartley refers to itself as a carrier in all forms utilized to conduct business. *See* ECF No. [60-10] at 2. Coex, in furtherance of these facts, also submitted evidence to the jury of an email exchange between Joanne Power, a Hartley employee, and Coex, wherein she advised Coex that Hartley would be responsible for "picking up" and "delivering" Coex's cargo. *See* ECF No. [173] at 7. Additionally, Odalys Ramos, a Coex employee charged with coordinating the Hartley business transaction, testified that Hartley never provided Coex with information about AAF's involvement in the transaction. *Id.* After considering the evidence, the jury found Hartley liable as a carrier under Carmack.

In addressing the Motion, the Court considers whether the verdict returned against Hartley is against the "greater—not just the great–weight of the evidence," such that the verdict constitutes a "miscarriage of justice." *See Lipphardt*, 267 F.3d at 1186. The Court finds that the facts as presented do not support this conclusion. Importantly, Eleventh Circuit precedent supports Coex's claim that Hartley, a reputed transportation company, qualifies as a carrier despite subcontracting the Coex transportation job to AAF without Coex's knowledge. *See UPS Supply Chain Solutions, Inc. v. Megatrux Transp.*, 750 F.3d 1282, 1288 (11th Cir. 2014) (holding

that an established carrier company that subcontracted a job without the shipper's knowledge still qualified as a carrier for the purposes of Carmack restitution); *see also KLS Air Express, Inc. v. Cheetah Transp. LLC*, 2007 WL 2428294, at *4 (E.D. Cal. Aug. 23, 2007) (showing that in cases where it is completely reasonable for the shipper to believe that the carrier company will handle their job personally, carrier liability can be established even if the job is secretly subcontracted). Hartley disagrees with the jury's verdict, contesting, among other things, the testimony of Ms. Ramos. The Court will not substitute its judgment for that of the jury, which considered all evidence in totality, and found Hartley to be a carrier. *See Lipphardt*, 267 F.3d at 1186. Accordingly, no new trial is warranted. *See id.*

Hartley further contends that even if it qualifies as a carrier, Coex still should not have succeeded in their claim because Coex did not establish a *prima facia* case under Carmack. Specifically, Hartley claims that Coex did not provide sufficient evidence as to the actual existence of the content in the cargo, the coffee in the bags, and the originally "good" condition of that coffee. *See A.I.G. Uru. Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F.3d 997, 1003 (11th Cir. 2003) (holding that cargo must be in proven good condition before transportation to assert liability under Carmack). The Court considers whether the jury's verdict led to a "miscarriage of justice" under Rule 59.

In cases governed by Carmack, the amount of evidence required as to the condition of the cargo in the transaction fluctuates depending on whether the cargo was in "sealed containers" or "unsealed containers." *See id.* at 1004. If the cargo is found to be in sealed containers, then the threshold for evidence relating to cargo contents is higher—direct evidence must be presented beyond a simple shipping receipt. *See Highlands Ins. Co. v. Strachan Shipping Co.*, 772 F.2d 1520, 1521 (11th Cir. 1985) (holding that, where there is no concrete proof that cargo was truly

Case 0:14-cv-62262-BB   Document 177   Entered on FLSD Docket 07/07/2016   Page 7 of 9

Case No.: 14-cv-62262-BLOOM/Valle

packed in the sealed containers, simple documentary evidence is not sufficient evidence of good quality). In contrast, cases of unsealed containers require only a "recitation of good condition and contents of the bill of lading" for evidentiary purposes given that contents are readily visible and confirmable at the time of shipment. *See Fine Foliage of Fla., Inc.* 901 F.2d at 1037; *A.I.G. Uru.*, 334 F.3d at 1003. Thus, the central question as to whether the cargo was in a sealed or unsealed container turns on whether the carrier can be reasonably expected to determine contents of the shipment through independent confirmation. *See A.I.G. Uru.*, 334 F.3d at 1003.

While Hartley asserts that the Coex coffee shipment constitutes a shipment of sealed containers subject to the higher evidentiary standard, the facts presented do not support this claim. Hartley urges the Court to find that the transaction is a sealed container shipment governed by *Highlands*. *See* 772 F.2d at 1521. In *Highlands*, the Court found that unopened boxes of television sets constituted "sealed" containers, and there was nothing to suggest that the televisions even existed within the boxes. *See id.* In this case, however, the jury was presented with evidence that the coffee was transported in thick burlap bags of consistent weight, color, smell, and marks. *See* ECF No. [173] at 8. The bags and the coffee product are therefore distinguishable, by odor and texture, from other similar cargo on the market. *See Fine Foliage*, 901 F.2d at 1037 (holding that distinctive fern plants, albeit lightly covered, were distinguishable and recognizable at the point of loading, and therefore qualify as unsealed).

Even disregarding the sensory distinction of the coffee, which Hartley contends is not sufficient evidence for "sealed container" status, testimony at trial by Juan Pablo Grisales and Marco Reis, Colmar employees, revealed a process at the warehouse wherein the coffee beans were removed and "deconsolidated" from each burlap bag and stored in containers prior to shipment. *See* ECF No. [173] at 8. The act of opening the containers and removing bags,

providing an opportunity to "independently ascertain the condition of the contents," strongly counsels against a sealed container finding. *See A.I.G. Uru.*, 334 F.3d at 1004. Indeed, this revealing storage process at Colmar distinguishes Coex's cargo even further from the unexamined boxes featured in *Highlands*. *See* 772 F.2d at 1521. Therefore, the evidence introduced at trial, including circumstantial evidence, is sufficient to establish cargo content. *See A.I.G. Uru.*, 334 F.3d at 1004. The jury, considering this evidence, found that Coex established Hartley's liability under Carmack, and the Court will not disturb that decision. *See id.* Hartley has not met its burden to establish that a new trial is warranted to avoid a "miscarriage of justice," and the Court, accordingly, denies the Motion.

Lastly, the Court rejects Hartley's contention that a new trial is warranted because the jury reached an improper, compromised verdict. Hartley bases its claim on the assertion that the amount and apportionment of damages are factually and legally inconsistent. *See* ECF No. [169] at 8. A "compromised verdict" is one in which jurors "resolve their inability to make a determination with any certainty or unanimity on the issue of liability by finding inadequate damages." *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 960 (11th Cir. 2014). An insufficient damages verdict standing alone, however, is not sufficient for a compromised verdict. Rather, something more, such as an improper court action, unsuitable juror activity, or evidence that the jury did not thoroughly understand their role, is required to demonstrate an "impermissible compromise." *Mekdeci By & Through Mekdeci v. Merrell Nat. Labs., A Div. of Richardson-Merrell, Inc.*, 711 F.2d 1510, 1514 (11th Cir. 1983). Fatally, Hartley has not presented any evidence to establish that the jury's verdict was compromised. *See Collins*, 749 F.3d at 960. Merely stating that the damages seem inconsistent with a finding of liability under Carmack does not satisfy the threshold for a new trial. *See Mekdeci By & Through Mekdeci*, 711 F.2d at 1514.

Case No.: 14-cv-62262-BLOOM/Valle

Because Hartley has failed to establish grounds for a new trial and has not otherwise established exceptional circumstances to warrant a relief from judgment, Hartley has necessarily failed to meet the heightened standard for a renewed judgment as a matter of law under Rule 50(b).  *See Dudley*, 166 F.3d at 1320 n.3.  Accordingly, the Motion is denied.

## IV.  CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that Hartley's Motion for Judgment as a Matter of Law, Motion for Relief from Judgment, and Motion for a New Trial, **ECF No. [169]**, is **DENIED**.

**DONE AND ORDERED** in Miami, Florida this 6th day of July, 2016.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record